UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MURAD A. TAHER,                                                    05-CV-0495E(Sc)

                        Plaintiff,

                                                                   MEMORANDUM
           -vs-
                                                                   and

MOTOROLA, INC. and
MOTOROLA DISABILITY INCOME PLAN,                                   ORDER[1]

                        Defendants.

_____

## INTRODUCTION

Plaintiff Murad Taher commenced this action against his former employer Motorola, Inc., and The Motorola Disability Income Plan (together "Motorola") pursuant to the Employees Retirement Income Security Act, 29 U.S.C. §1001 *et seq*. Taher seeks payment of short-term and long-term disability benefits that he claims are due him under the terms of the Plan.  Pending before the Court are Taher's and Motorola's competing Motions for Summary Judgment.

## FACTS

The following facts are undisputed, except where noted.  Plaintiff Murad Taher commenced employment for Motorola on January 23, 1995 and was employed as a systems operator.  During his employment, Taher was covered under the Motorola Disability Income Plan ("the Plan") which provided for both short-term and long-term

_____

[1]This decision may be cited in whole or in any part.

disability benefits.  Motorola designated the Administrative Committee as the Plan's administrator.  The Administrative Committee, in turn, named CORE, Inc. ("CORE") as the Motorola Disability Management Program which is responsible for certifying the disability finding of a claimant's treating physician and managing the disability process.   CORE compiled all of the relevant medical information and made recommendations to the Administrative Committee.  The Administrative Committee also delegated the review and determination of benefits claims to the Motorola Benefits Review Committee.

On September 28, 2002 Taher was involved in a motor vehicle accident.  He thereafter applied for short-term disability benefits which were granted subject to on-going disability certification.  Motorola, through CORE, conferred with two physicians treating Taher, Dr. Frederick Occhino and Dr. John Pollina.  Dr. Occhino began treating Taher and advised CORE in medical notes dated October 11, 2002 and January 14, 2003 that Taher was disabled from working.  (R. 230-32; 264-67).[2]  Dr. Occhino advised that he was Taher's primary treating physician.  (R. 299).

On January 29, 2003, Dr. Occhino's office advised Dr. J.D. Beavers, a CORE medical specialist, that he had referred Taher to Dr. Pollina.  CORE also obtained treatment records and a letter from Dr. Pollina to Dr. Occhino dated January 31, 2003 and reflecting Dr. Pollina's examination of Taher on January 16, 2003. (R. 261-62).  Dr.

---

[2]References to (R.___) are to the Bates-stamped pages of the administrative record filed by Motorola.

Pollina concluded that Taher had lower back pain radiating down his legs attributable to a very mild herniated disc in the lumbar region.  (R. 262).  Dr. Beavers spoke with Dr. Pollina who opined that Taher's symptoms were out of proportion with Dr. Pollina's findings upon examination and review of the MRI.  Dr. Pollina expected Taher to be able to return to work on or about February 16, 2003.  (R. 164). On February 14, 2003, Dr. Beavers again spoke with Dr. Pollina who then stated that Taher should continue on disability until March 16, 2003.  (R. 166).

Dr. Beavers attempted to contact Dr. Pollina for an update as to Taher's status on March 17, March 19 and March 24, 2003, but received no return calls.  (R. 166).  On March 26, 2003, Dr. Beavers called Dr. Occhino's office for a report on Taher's status, but was informed by Dr. Occhino's office that Dr. Pollina was to determine Taher's future treatment.  (R. 166).  As Dr. Beavers was unable to obtain a status report as to Taher's disability, he recommended that short-term disability benefits be terminated as of March 16, 2003.[3]  Taher was advised of such determination by letter dated March 28, 2003.

On April 9, 2003 Taher filed an appeal of the termination of his benefits and provided an April 10, 2003 prescription note from Dr. Occhino opining that Taher was totally disabled and indicating that Taher was to follow up with Dr. Pollina.  (R. 142-

[3]As the Plan states that a claimant is not eligible for long-term disability benefits until he or she has been receiving short term benefits for a period of 180 days, Taher was not eligible for long-term disability benefits until April 7, 2003.  At no time did Motorola commence paying Taher long-term disability benefits under the Plan.

43).  On April 16, 2003, Taher advised CORE by telephone that he would commence seeing Dr. Whagamare, a pain specialist, on the referral of his neurosurgeon (presumedly, Dr. Pollina) but that he would not be able to commence such treatment until June, 2003 due to Dr. Waghmarae's schedule.   At that time, he provided a telephone number for Dr. Waghmarae.   On April 23, 2003, Dr. Beavers reviewed Taher's file and attempted to contact Dr. Pollina again.  Dr. Beavers noted that Dr. Pollina refused to discuss Taher's case and said that he had referred Taher back to Dr. Occhino.  (R. 93).  Dr. Occhino did not return messages left for him by Dr. Beavers on April 16 and April 21, 2003.  (R. 93).

In May 2003, CORE scheduled Taher for an independent medical examination by Dr. Hughes, a neurologist.  In the notice for his appointment, Taher was advised to bring with him to the exam any additional medical records which had not previously been submitted.  Taher appeared for the exam on June 9, 2003, but did not submit any additional medical records.  In a June 9, 2003 report, Dr. Hughes opined that Taher was able to resume his work activity with no restriction and concluded that Taher exhibited some signs of symptom magnification.  (R. 175-78).  Dr. Hughes also completed a Modification Checklist which included some mild exertional limitations.  (R. 272).  On June 11, 2003, Dr. Hughes was asked to clarify his Modification Checklist as it appeared to conflict with the content of his report, specifically wherein he opined that Taher could work without restriction.   In response, on June 13, 2003, Dr. Hughes revised the Modification Checklist by

removing all restrictions.  (R. 92).  In an addendum to his June 9, 2003 report, Dr.

Hughes also clarified that, as he had not examined Taher until June 9, 2003 and as

he lacked any records pertaining to Taher's treatment, if any, between March 16 and

June 9, he was unable to conclude whether or not Taher was disabled on March 16,

2003.  This addendum was faxed to CORE on June 27, 2003.  (R. 370).  On June 30,

2003, CORE recommended to Motorola that the termination of short-term benefits be

upheld.  (R. 117).

In July 2003, Motorola arranged to have Taher's file reviewed by independent

physicians under a peer review analysis.  On July 17, 2003, Motorola advised Taher

that the deadline for determining his appeal had been tolled during the pendency of

the independent medical examination and that a determination would be reached as

soon as possible.  (R. 116).  On or about July 22, 2003, Taher advised Motorola that he

had seen a Dr. Lewis and that Dr. Lewis had scheduled him for surgery, but did not

provide CORE with the anticipated date for the surgery.[4]  Taher never provided CORE

with the medical records from his July 1, 2003 appointment with Dr. Lewis.[5]  Also in

---

[4]On December 19, 2002, Dr. Occhino's office had advised CORE that Taher was being referred to Dr. Lewis.  On December 23, 2002, Taher also advised CORE of the referral to Dr. Lewis, but thereafter on January 15, 2003, advised CORE that he would be treated by Dr. Pollina and that he had cancelled his appointment with Dr. Lewis.

[5]Motorola argues that Taher also never provided contact information for Dr. Lewis, but there is an indication in CORE's notes that a telephone number for Dr. Lewis was provided to CORE by Taher on December 23, 2002, when he was first referred to Dr. Lewis.  Taher never kept an appointment with Dr. Lewis, however, until July 1, 2003 and did not provide any contact information for Dr. Lewis at that time.

July 2003, Taher was involved in another motor vehicle accident but apparently never advised Motorola or CORE of that event.

On August 11, 2003, at CORE's request, Dr. Leela Rangaswammy, an orthopedist, completed a peer review analysis of Taher's file. (R. 137-40). She attempted to contact Taher's "treating physician" on nearly 30 occasions between July and August 2003, but the office would not cooperate with her requests for information.[6] She concluded that, based on the information in the file, Taher was not disabled. (R. 138-39). On September 5, 2003, another peer review was conducted by Dr. F. Daniel Kharrazi, an orthopedist. (R. 109-11). After Dr. Occhino refused to speak with Dr. Kharrazi, Dr. Kharrazi conducted a review of Taher's file and also concluded that Taher was not disabled and could work without restrictions. (R. 110).

Also on September 5, 2003, CORE forwarded Taher's claim file to Motorola, concluding that the file supported the termination of benefits. (R. 101). On September 10, 2003, CORE confirmed that it had concluded that Taher had not substantiated his claim and recommended denial of Taher's appeal. (R. 86). On September 11, 2003, Motorola denied Taher's appeal for short-term disability benefits. (R. 84-85).

On October 14, 2003, Motorola was contacted by counsel for Taher seeking the Plan document and the claim file. (R. 112). On January 7, 2004, counsel for Taher sent to Motorola a number of medical records which had not been previously supplied

---

[6]It is unclear from Dr. Rangaswamy's report whether she attempted to contact Dr. Occhino or Dr. Pollina, but the pertinent point is that she could not obtain any cooperation from either doctor's office.

to Motorola or to CORE.[7]   (R. 57-75).   Motorola forwarded the records to CORE on February 9, 2004.  (R. 56).  On January 29, 2004, counsel provided Motorola with a decision awarding Social Security disability benefits to Taher, effective September 28, 2002.  (R. 51-55).

DISCUSSION

FRCvP 56(c) states that summary judgment may be granted only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   The moving party bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.  *Goenaga* v. *March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (internal citation omitted).  If the moving party makes such a showing, the non-moving party must then come forward with evidence of specific facts sufficient to support a jury verdict in order to survive the summary judgment motion.  *Ibid.*  In other words, after discovery and upon a motion, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986).

---

[7]Included in this submission were letters from Dr. Lewis to Dr. Occhino documenting his recommendation that Taher undergo surgery.  No records have ever been supplied from Dr. Waghmarae, despite Taher's contention that such records support Taher's claim of disability and were disregarded by Motorola.

"In assessing the record to determine whether there is a genuine issue as to any material fact, the district court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought." *St. Pierre* v. *Dyer*, 208 F.3d 394, 404 (2d Cir. 2000) (*citing Anderson* v. *Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)).   Nonetheless, mere conclusions, conjecture, unsubstantiated allegations or surmise on the part of the non-moving party are insufficient to defeat a well-grounded motion for summary judgment. *See Goenaga*, at 18.

A.  Standard of Review

"A denial of benefits challenged under [29 U.S.C.] §1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co.* v. *Bruch*, 489 U.S. 101, 115 (1989). When such discretionary authority is given to the plan administrator, however, the determination of the plan administrator is subject to the arbitrary and capricious standard of review. *See Kinstler* v. *First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 249-252 (2d Cir. 1999).  The plan administrator bears the burden of demonstrating that such discretion has been granted and that the arbitrary and capricious standard of review applies. *Ibid*.

Under such review, a denial of benefits "may be overturned only if the decision is 'without reason, unsupported by substantial evidence or erroneous as a matter of

law.'" *Id.* at 249 (*quoting Pagan* v. *NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995)).  Substantial evidence is "evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decision maker and] *** requires more than a scintilla but less than a preponderance." *Miller* v. *United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995) (internal citation and quotation omitted). Furthermore, "where the administrator 'imposes a standard not required by the plan provisions, or interprets the plan in a manner inconsistent with its plain words, *** [its] actions may well be found to be arbitrary and capricious.' " *Pulvers* v. *First Unum Life Ins. Co.*, 210 F.3d 89, 93 (2d Cir. 2000) (quoting *O'Shea* v. *First Manhattan Co. Thrift Plan & Trust*, 55 F.3d 109, 112 (2d Cir. 1995)).  Whether applying a *de novo* standard or arbitrary and capricious standard, the scope of the Court's review is limited and the Court may generally only consider the administrative record before the plan administrator when it made its decision regarding benefits.[8]  *See Nagele* v. *Elec. Data Sys. Corp.*, 193 F.R.D. 94, 101 (W.D.N.Y. 2000).

---

[8]The Court may consider evidence outside of the administrative record upon a finding of good cause.  *See DeFelice* v. *Am. Int'l Life Assurance Co. of New York*, 112 F.3d 61, 66-67 (2d Cir. 2006).  Taher argues that Motorola's version of the administrative record submitted to the Court is incomplete because it does not include the January 2004 decision granting Taher Social Security disability benefits, nor does it include the materials provided to Motorola by Taher's counsel in 2004.  It is undisputed, however, that Motorola denied Taher's appeal from the termination of benefits in September 2003.  Thus, any materials submitted in 2004 were not before the plan administrator at the time the relevant decision was made.  Taher has not argued that good cause exists to expand the record to include these materials.  Accordingly, the Court has not considered them.

Motorola argues that the plan grants to the plan administrator discretionary authority to determine eligibility for benefits and to construe the terms of the plan and thus, the decisions of the plan administrator are subject to the arbitrary and capricious standard of review.  Taher argues, however, that the plan administrator ignored its own published procedures, and that because the plan did not grant it discretion to do so, the administrator's decision should be reviewed under a *de novo* standard.  Taher further argues that whether the Court reviews the determination under a *de novo* standard or the arbitrary and capricious standard, Taher is still entitled to an award of summary judgment.

The Court concludes that the plan grants discretionary authority to the plan administrator to determine eligibility under the plan and to construe the terms of the plan.  Specifically, the Plan states that the plan administrator has the authority

> "to construe and interpret the Plan, decide all questions of fact and questions of eligibility and determine the amount, manner and time payment of any benefits hereunder.  The Committee shall have discretionary authority to grant or deny benefits under the Plan. Benefits under the Plan will be paid only if the Committee decides in its discretion that the applicant is entitled to them."

Plan §10.2(e).  Section 4.3 of the Plan also sets forth the procedure for decisions on claims:

> "**<u>Decision on the Claims for Disability</u>**.  [CORE] will provide to the [Administrative Committee] the determination on the disability claim along with any information and documentation substantiating such recommendation.  The [Administrative Committee] shall rely on such recommendation in approving or denying the claim for disability benefits.  The [Administrative Committee] has the sole and complete

- 10 -

discretion to approve or deny any portion of the recommendation and [CORE] and to base its determination on factors that [CORE] may not have considered in making the recommendation."

Taher argues that under the Plan's Claim Procedures, Motorola should have pended his claim and provided him with 45 days in which to provide additional information.  The Claims Procedure to which Taher points, however, concerns the initial determination as to whether a claim should be approved or denied.  There is no dispute that Motorola initially granted Taher's claim for benefits.  The approval of the claim was only subject to on-going certification by Taher's physicians.  As such, there was no reason to pend the claim pursuant to those procedures.  Even if such failure to pend the claim could be considered a failure to follow the Claim Procedures, Taher has failed to provide any legal authority for his contention that, when plan procedures are not properly followed, the *de novo* standard of review should be applied.[9]  Therefore, the Court will apply the arbitrary and capricious standard of review.  Upon such review, the Court concludes that the plan administrator's decision terminating Taher's short-term disability benefits as of March 16, 2003 was not arbitrary or capricious.

---

[9]For example, Taher cites the case of *Shutts* v. *First Unum Life Ins. Co. of America*, 310 F. Supp. 2d 489, 496 (N.D.N.Y. 2004).  In *Shutts*, the plaintiff also argued that a *de novo* standard of review should apply and, in support of his argument, Shutts cited the case of *Shelden* v. *Barre Belt Granite Employer Union Pension Fund*, 25 F.3d 74 (2d Cir. 1994).  In examining the *Shelden* case, the *Shutts* court concluded that *Shelden* stood for the proposition that when a fiduciary ignores plan requirements the arbitrary and capricious standard of review may be satisfied. Neither *Shutts* nor *Shelden* applied a *de novo* standard of review.

The plan administrator denied Taher's appeal on September 11, 2003.  At that time, before the plan administrator were treatment or examination records from Dr. Occhino, Dr. Pollina and Dr. Hughes.  Also before the administrator were the peer reviews of Dr. Rangaswamy and Dr. Kharrazi.  Only Dr. Occhino opined that Taher was disabled on or after March 16, 2003.[10]  Dr. Occhino refused to speak with CORE's physician, Dr. Beavers, and with the reviewing physicians with respect to his opinion as to Taher's disability.

Taher argues that Motorola's decision was arbitrary and capricious because Motorola failed to obtain the treatment records from Dr. Lewis and Dr. Waghmarae, a pain management doctor, both of whom allegedly concluded that Taher was and is disabled.  Motorola contends that it was never provided with the medical records, the dates of treatment or contact information for Dr. Lewis or Dr. Waghmarae.  While CORE's notes reflect that it was provided with the telephone numbers for both doctors, Taher advised CORE that he would not be treating with Dr. Lewis but with Dr. Pollina instead.  It is undisputed that Taher never provided CORE with records from his treatment with Dr. Lewis until after his appeal had already been denied

[10]Dr. Occhino's conclusion was contained in a notation on a prescription pad dated April 10, 2003.  In it, Dr. Occhino concluded that Taher still experienced pain, that straight-leg raises were positive and that he continued to remain disabled.  Dr. Occhino noted that treatment regime consisted of some medications and that Taher was to follow up with Dr. Pollina.  The only other information as to Taher's alleged disability during the relevant time period is a letter from Dr. Pollina to Dr. Occhino regarding Dr. Pollina's examination of Taher on March 20, 2003.  The Court will not consider such letter as it was not provided to Motorola until after Motorola had denied Taher's appeal.  Even if it could be considered, Dr. Pollina did not conclude that Taher remained disable.

(despite the fact that he was treating with Dr. Lewis while his appeal was pending) and never provided CORE with any records from Dr. Waghmarae.  Both the Plan and the Summary Plan Description clearly state that it is the claimants burden to furnish satisfactory documentation of his disability.  Thus, the Court concludes that CORE's or Motorola's failure to obtain records from Dr. Lewis or Dr. Waghmarae did not render its decision arbitrary and capricious.[11]

Moreover, even if Taher or Motorola had obtained the records from Dr. Lewis and Dr. Waghmarae, Taher did not commence treatment with either of those practitioners until June or July 2003.  Thus, neither of those doctors could have opined as to Taher's disability status on March 16, 2003, the date on which Taher's benefits terminated, as neither of them had examined Taher as of that date.

Finally, Taher argues that Motorola failed to consider the fact that an Administrative Law Judge determined in January 2004 that Taher was entitled to Social Security disability benefits commencing as of September 28, 2002.  As the Court previously noted, however, that decision was not issued until January 2004, and Taher's appeal had been denied by Motorola in September 2003.  Thus, Motorola could not have considered such decision in determining Taher's appeal.  *See*, fn.8.  Thus, its failure to consider the Social Security award could not render Motorola's determination arbitrary and capricious.

---

[11]Taher further argues that the failure to provide such records to the reviewing physicians likewise renders the denial of his appeal arbitrary and capricious.  For the same reasons as stated above, this argument fails as well.

CONCLUSION

For the reasons stated above, it is **ORDERED** that Motorola's Motion for Summary Judgment is GRANTED; Taher's Motion for Summary Judgment is DENIED and the Clerk of the Court is directed to take all steps necessary to close the case.

DATED:        Buffalo, N.Y.

              July 18, 2007


                              _____
                              */s/ John T. Elfvin*
                              JOHN T. ELFVIN
                              S.U.S.D.J.